IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

SECUREINFO CORPORATION,            )
                                   )
          Plaintiff,               )
                                   )
     v.                            )    CIVIL ACTION NO. 05-505
                                   )
TELOS CORPORATION, *et al.*,       )
                                   )
          Defendants.              )

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants Telos Corporation ("Telos"), Xacta Corporation ("Xacta"), John B. Wood ("Mr. Wood"), Richard P. Tracy ("Mr. Tracy"), and David J. Wilson's ("Mr. Wilson") (collectively "Telos Defendants") Motion to Dismiss Counts I-IV and VI-XIII[1] of the Amended Complaint, as well as Defendant Lon J. Berman's ("Mr. Berman") Motion to Dismiss Counts IV-IX of Plaintiff's Amended Complaint. The mammoth Amended Complaint is 114 pages long and contains 619 paragraphs, hardly the model of brevity that the Federal Rules of Civil Procedure contemplate. *See* FED. R. CIV. P. 8(e) ("Each averment of a pleading shall be simple, concise, and direct."). Plaintiff SecureInfo Corporation ("SecureInfo," "Plantiff")

---

[1] Despite the title of the Telos Defendants' motion, they present no argument in favor of dismissing Count XI. Consequently, the Court denies Defendants' motion to dismiss Count XI because no basis is provided for the motion. *See* Loc. R. 7(a) (requiring movants to "state with particularity the grounds" for a motion).

alleges that the Telos Defendants, acting in concert with Mr.
Berman, obtained a copy of SecureInfo's software in violation of
licensing agreements entered into between Mr. Berman's company,
BAI, and the plaintiff to conduct a competitive analysis of
SecureInfo's product.   The issues before the Court are
(1) whether to dismiss Plaintiff's claims under the Computer
Fraud and Abuse Act, 18 U.S.C.A. § 1030 (West 2000 & Supp. 2005)
pursuant to Federal Rule of Civil Procedure 12(b)(6) because
Plaintiff does not allege that Mr. Wilson, Xacta, and Telos had
"unauthorized access" to the BAI server or that they "exceeded
authorized access" within the meaning of the statute;
(2) whether to dismiss the plaintiff's claims under the Copyright
Act, 17 U.S.C.A. § 501 (West 2005) because the forms allegedly
copied by the Telos Defendants were not copyrightable elements of
SecureInfo's Software or because the copied materials do not
comprise a substantial part of SecureInfo's program considered as
a whole;
(3) whether to dismiss the plaintiff's claims under the Racketeer
Influenced Corrupt Practices Act, 18 U.S.C.A. § 1961 (West 2000 &
Supp. 2005)  (hereinafter, "RICO," "RICO statute") because there
is no pattern of racketeering activity within the meaning of the
RICO statute, and the Telos Defendants did not control the
alleged enterprise;
(4) whether to dismiss Plaintiff's fraud claim against Mr. Berman

because the fraud claim flows out of a breach of the license agreements, not an independent tort, and is barred by Virginia law, or whether to dismiss Plaintiff's fraud claim because it alleges no damages resulting from Mr. Berman's alleged fraud; (5) whether to dismiss Counts VI and IX of Plaintiff's Amended Complaint because an entity can neither conspire nor combine with an agent under Virginia law; (6) whether to dismiss the common law tortious interference with contract or business relationship claim because an entity or person cannot interfere with its, his, or her own contract; and (7) whether to dismiss (a) Counts X (Virginia Computer Crimes Act, Va. Code Ann. § 18.2-152.3 (Michie 2004 & Supp. 2005), (b) XII (common law trespass to chattels), and (c) XIII (common law detinue) of Plaintiff's Amended Complaint because they are preempted by the Copyright Act or patently without merit.

The Court

(1) grants Defendants' motion to dismiss the Computer Fraud and Abuse Act claims because Plaintiff does not properly allege that Defendants Mr. Wilson, Telos, and Xacta had "unauthorized access" to the BAI server or accessed the server in "excess of authority" within the meaning of the statute;

(2) denies Defendants' motion to dismiss the Copyright Act claim as to the QuickStart Guide because it is independently copyrighted and Plaintiff alleges that it was copied, satisfying

the requirements to state a claim for copyright infringement pursuant to the Copyright Act, and the Court denies the defendants' motion to dismiss the copyright claim as to the other outputs of RMS because, taking the plaintiff's allegations as true, as required by Federal Rule of Civil Procedure 12(b)(6), the forms are protected by the Copyright Act;

(3) grants Defendants' motion to dismiss the RICO claim because Plaintiff does not establish a "pattern of racketeering activity" as required by RICO, 18 U.S.C.A. § 1962(c);

(4) grants Defendant Mr. Berman's motion to dismiss the fraud and deceit claim against him because, regardless of whether the claim sounds in tort or contract, SecureInfo failed to allege actual damages flowing from the fraud, as required by Virginia law, *see, e.g., Community Bank v. Wright*, 267 S.E.2d 158, 160 (Va. 1980);

(5) grants Defendants' motion to dismiss Counts VI and IX of Plaintiff's Amended Complaint because an entity can neither conspire nor combine with an agent under Virginia law, and Plaintiff's factual allegations establish that Mr. Berman was an agent of the Telos Defendants, *Lewin v. Cooke*, 95 F.Supp.2d 513, 524-25 (E.D.Va. 2000);

(6) grants Defendant's motion to dismiss the common law tortious interference claim because a person or entity cannot intentionally interfere with  his, her, or its own contract, *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987);

4

(7)(a) grants Defendants' motion to dismiss the Virginia Computer Crimes Act claim because it is preempted by the Copyright Act, *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993);

(7)(b) grants Defendants' motion to dismiss the common law trespass to chattels claim because Plaintiff does not allege that the chattel itself was impaired by the trespass, *America Online, Inc. v. IMS*, 24 F.Supp.2d 548, 550 (E.D.Va. 1998); and

(7)(c) denies Defendants' motion to dismiss the common law detinue claim because it is not preempted by the Copyright Act, and because Plaintiff states a claim for detinue under Virginia law, *Talley v. Drumheller*, 115 S.E. 517 (Va. 1923).

## I. BACKGROUND

*Basic Information About The Risk Management System*

Plaintiff SecureInfo Corporation ("SecureInfo," "Plaintiff") provides products and services to customers seeking to ensure information security compliance, managed cyber security operations, and risk management.  SecureInfo created the "Risk Management System" ("RMS") to allow organizations to integrate information security compliance requirements and test plans, using a workflow tool tailored for the risk assessment process. RMS's source code, object code, data, database, content, input displays, output, and related works are protected by copyright

and contain confidential information.  RMS is created by a team
of SecureInfo employees who analyze the appropriate industry best
practices, government regulations and requirements and then
extrapolate a database to systemize the compliance process into a
relational framework that assesses an agency's regulatory
requirements and the stringency with which an agency applies a
regulation or requirement.

RMS contains content libraries tailored to each particular
customer.  Each content library contains particular regulations,
laws or directives; requirements necessary to comply with the
regulation, and tests to validate whether the customer has met
the requirements and complied with the regulations.  Once
regulations are analyzed by SecureInfo's team of analysts,
SecureInfo's subject matter experts create a requirements list
based on each regulation and specific test to ensure compliance
with the applicable regulation.  The requirements and test plan
within a content library are distinctive to SecureInfo as they
are interpreted, authored, managed, and updated by SecureInfo.
One example of a content library is "RMS: DITSCAP"; it
concentrates on regulatory requirements for military agencies
subject to the Department of Defense Information Technology
Security Certification and Accreditation Process.

RMS generates documents and templates to lead a customer
through the regulatory compliance process.  These documents

6

include the Requirements Traceability Matrix ("RTM"), the Certification and Accreditation Package ("C & A Package"), the Master Test Procedures or Plan ("MTP"), and the System Security Plan ("SSP").  The RTM contains a matrix of the regulations and requirements a customer is subject to and the test plan the customer must accomplish to achieve compliance.  The MTP is a template for all the tests a customer must pass to comply with relevant regulations.  The SSP is a template to assist the customer in securing its entire system network. Both the SSP and the MTP contain text.

Customers may not purchase RMS, but rather, SecureInfo sells licenses to use it under strict and restrictive terms and conditions.  The licensing agreements require customers to agree to stringent requirements to maintain RMS as a trade secret.

*Defendants Obtain Copies of SecureInfo's RMS*

Defendant Mr. Wilson is employed by SecureInfo's largest competitor, Xacta, to develop and manage current and new products competing with SecureInfo's RMS product.  Defendant Mr. Berman is an employee of Berman Associates, Inc ("BAI"), a consulting firm to individuals or corporations doing business with United States government agencies.

Plaintiff alleges that Mr. Wilson, on behalf of Xacta and Telos, hired Mr. Berman and BAI to perform a comparison between

Xacta IA Manager and SecureInfo's RMS.  Subsequently, Mr. Berman

contacted SecureInfo's Vice President of Business Development and

falsely told him he wished to license SecureInfo's RMS for a

project he had with the General Services Administration in

connection with BAI's consulting business customer compliance

projects.  Next, on January 18, 2005, Mr. Berman, acting on

behalf of BAI, signed a Mutual Non-Disclosure Agreement with

SecureInfo.  Under the terms of the Agreement, BAI agreed to hold

confidential the contents of any software system licensed by

SecureInfo to BAI.  On February 25, 2005, Mr. Berman executed a

Software License and Support Agreement ("SLSA") between

SecureInfo and BAI.  The SLSA required BAI to notify SecureInfo

if BAI intended to disclose RMS, RTM, or other content to third

parties and to first obtain authorization from SecureInfo.  The

SLSA explicitly defines what constitutes "confidential

information," RTM, and "content."  It also contains provisions

prohibiting a licensee from disassembling or reverse engineering

the SecureInfo software or allowing others to use the software.

That same day, SecureInfo sent Version 3.2.06 of RMS and

supporting documentation to Mr. Berman.


*Viewing the Software*

     Plaintiffs allege that on February 28, 2005, Mr. Berman had

trouble installing RMS on his computer and he emailed Warren

8

Smith ("Mr. Smith"), an employee in the Information Technology Department at Telos and Xacta, copying his email to Mr. Wilson. The email stated: "[t]he RMS I'm installing is looking for 'SQL Server JDBC drivers' which it apparently can't find because it is telling me to download them."  Mr. Berman signed his correspondence with Xacta as "Lon Berman, Consultant to Xacta," while his emails to SecureInfo came from a BAI Software domain name.  On March 1, 2005, Mr. Berman caused BAI to issue an invoice to Xacta billing it $18,000 for "RMS and Maintenance." On March 14, 2005, Mr. Berman e-mailed Mr. Wilson about payment for his services: "[a]ccording to our agreement on the SI evaluation task, I was to receive a check for $18K upon receipt of the software from SI.  It has been more than two weeks since I bought in the software for you to see..."

On March 15 and 16, 2005, Mr. Berman and Jeffrey Widom ("Mr. Widom"), an independent contractor for BAI attended RMS training at SecureInfo's office in Tyson's Corner, Virginia.  On March 16, 2005, Telos issued a Purchase Order to BAI for payment of $18,000.  A March 16, 2005 "Telos Corporation Purchase Order Register Report" shows a project to be performed by BAI for "FFP SERVICES Competitive Product A."  The project is described on the register report as "Lon will be completing a competitive analysis.  He has purchased the competitive product and will need payment for this as soon as PO is processed ($18,000)."  The

9

report further states that Mr. Berman is the "preferred vendor."
In addition, a "Sole Source Justification" ("SSJ") in connection
with Information Security Consulting Services to be performed by
Mr. Berman states that he "was one of the original inventors
associated with the development of the Xacta Web C & A
application," and that he has "consistently produced satisfactory
work for Xacta."  Among other email exchanges, on March 17, 2005,
Mr. Tracy sent an email to Mr. Wood stating that Mr. Berman "'has
been looking for the secret sauce....'"

*Copying SecureInfo Material*

     Plaintiff alleges that on March 17, 2005, Mr. Berman made a
copy of SecureInfo's RMS Master Test Plan and e-mailed it to Mr.
Tracy.  Mr. Tracy then made two copies of RMS's Master Test Plan
and e-mailed it to Mr. Wilson and to another employee of Telos or
Xacta. In addition, Plaintiff alleges that on March 23, 2005, Mr.
Berman copied and e-mailed to Mr. Wilson SecureInfo's RMS 3.2.06
Quickstart Guide.

     On that same day, Mr. Berman signed a Pilot License
Agreement ("PLA") on behalf of BAI with SecureInfo to evaluate
SecureInfo's RMS: DITSCAP ARMY package, which was subsequently
mailed to Mr. Berman.  Attachment A to the PLA limits the number
of authorized BAI users to two and requires BAI to maintain
confidentiality of the package.  Plaintiff alleges that Mr.

10

Berman subsequently placed the package on BAI's server.

On March 26, 2005, Mr. Wilson copied SecureInfo's RMS 3.2.06 Quickstart Guide and emailed it from an email address at Xacta.com to Mr. Wilson's private email account.  On April 4, 2005 and April 6, 2005, Plaintiff alleges that Mr. Wilson accessed the BAI server, logged onto SecureInfo's RMS several times, used the C&A package, and made copies of and exported RMS's Master Test Procedures, Requirements Traceability Matrix, and 3-System Security Plan.

### *Counts in the Amended Complaint*:

Plaintiff filed its Amended Complaint on June 16, 2005, alleging thirteen separate causes of action against the Telos Defendants and Mr. Berman.

> *Counts I-III: Xacta, Telos, and Mr. Wilson's Violation of the Computer Fraud and Abuse Act, 18 U.S.C.A §§ 1030(a)(2)(C), (a)(4), (a)(5)(A)(iii), (a)(5)(B), (g)*

The first three counts in Plaintiff's thirteen count complaint, alleged against Xacta, Telos, and Mr. Wilson, are for violation of several provisions of the Computer Fraud and Abuse Act.  In essence, Plaintiff alleges that Plaintiff licensed RMS to BAI, BAI stored RMS on its server, which qualifies as a "protected computer" under 18 U.S.C.A. § 1030(e)(2)(B), and that Mr. Wilson, and possibly other employees of Telos or Xacta, accessed the BAI server and downloaded and obtained information

11

about RMS from the BAI server.  SecureInfo alleges that, despite

its license agreements with Mr. Berman's company, BAI,

prohibiting it from showing SecureInfo's materials to third

parties, Mr. Berman allowed Mr. Wilson and possibly others to

view the contents of SecureInfo's RMS on the BAI server.  *See,*

*e.g.,* Amended Compl. ¶¶ 193-206, 241.  In detailing the harm it

suffered as a result of alleged violations of the CFAA, in Count

I of the Amended Complaint, SecureInfo alleges that "[t]he loss

Plaintiff SecureInfo has suffered as a result of the unlawful

actions of Defendant Wilson and/or of someone acting on his

behalf, including, but not limited to, responding to and

investigating the scope of his actions, exceed[s] $5,000."

Amended Compl. ¶ 210.  The plaintiff repeats the same allegations

for Counts II and III of the Amended Complaint.  *See id.* ¶¶ 229-

31 (Count II); ¶¶ 248-50 (Count III).  Also, Plaintiff alleges

that, as a result of these unlawful actions, it lost competitive

advantage and suffered uncompensated use of its intellectual

property.  Plaintiff alleges that Defendants Telos, Xacta, and

Mr. Wilson's actions will cost SecureInfo $20 million.


*Count IV: Copyright Infringement, 17 U.S.C.A. §§ 501 against Defendants Telos, Xacta, Mr. Tracy, Mr. Wilson, and Mr. Berman*

In its fourth count, SecureInfo alleges that it owns all

title, rights, and interests in the copyright for RMS, including

12

its object and source codes, database, and associated database
content.  These materials are covered by copyright registration
TXu 1-209-211 registered by the United States Copyright Office on
May 16, 2005.  The copyright registration covers all screen
displays and other outputs, such as printouts generated by RMS.
In addition, SecureInfo owns all title, rights, and interests in
the copyright for the RMS SQL Database registered by the U.S.
Copyright Office on May 18, 2005, under copyright registration
TXu 1-209-282.  It also owns the title rights and interests in
the copyright for guides, manuals, and documentation related to
RMS, such as the "RMS 3.2.06 Quickstart Guide," registered by the
U.S. Copyright Office on May 27, 2005, under copyright
registration TXu 1-209-292.  SecureInfo placed copyright notices
on RMS, RMS manuals and guides and related tutorials and
demonstrations, and it does not allow copying of its copyrighted
materials.

SecureInfo granted a limited license to BAI for SecureInfo's
copyrighted works, subject to the condition that it abide by the
terms of the SLSA, Pilot Agreement, and a Non-Disclosure
Agreement.  Plaintiff alleges that Mr. Berman infringed
SecureInfo's copyright registrations by copying and installing
SecureInfo's RMS with database content, manuals, and guides, and
related material for a use beyond the scope of the licenses
granted to him.  Furthermore, Mr. Berman permitted Defendants

Telos, Xacta, Mr. Wilson, and Mr. Tracy to have unauthorized access to RMS on BAI's server and to download, display, or produce outputs of the RTM, the C&A Package, the MTP, the SSP, and NIST Questionnaire, and RMS manuals and guides and related materials.  Plaintiff asserts that the output generated by RMS is "expression which is primarily text." Amended Compl. ¶ 262. Defendant Mr. Berman exceeded the scope of the licenses that he signed with Plaintiff by permitting access to its server to the Telos Defendants (with the exception of Mr. Wood), and by copying and transmitting over the Internet, copies of SecureInfo's RMS manuals and guides.  In addition, Plaintiff alleges that he committed copyright infringement by exceeding the scope of the agreements he signed with SecureInfo.  In particular, in support of its copyright claim, Plaintiff alleges, in part, that

> Defendants Telos, Xacta, Wilson, Tracy and/or someone acting on their behalf accessed and used the RMS residing on the BAI Server and received or downloaded over the public Internet, copied onto their computer system, viewed on their screen displays, or produced outputs of SecureInfo's RMS system, RMS manuals and guides, RMS related material and RMS database content including, but not limited to, the RTM, the C&A Package, the MTP, the SSP, the NIST Questionnaire and the RMS QuickStart 3.2.06 Guide.

Amended Compl. ¶ 269.  In paragraphs 142 to 175, Plaintiff alleges, more specifically, that Defendant Wilson accessed BAI's server, made copies of and emailed himself (1) the RMS 3.2.06 Quickstart Guide, (2) the Master Test Procedures of the C&A Package, (3) the Requirements Traceability Matrix from the C&A

Package, and (4) the "3-System Security Plan (Master Document)."

SecureInfo further alleges that these defendants "directed and paid" Mr. Berman to obtain a copy of RMS, RMS database content, RMS manuals and guides, and related material, to permit the Telos Defendants to access them.  Amended Compl. ¶ 265. According to the Plaintiff, these defendants directly infringed SecureInfo's copyright because they knew that Mr. Berman was acting beyond the scope of licenses provided to him in allowing them access to the RMS materials. Further, they "contributorily infringed" SecureInfo's copyrights by actively participating in inducing, materially contributing or furthering Mr. Berman's infringement of SecureInfo's copyrights.  Amended Compl. ¶ 267. SecureInfo alleges that Defendants Telos, Xacta, Mr. Wilson, and Mr. Tracy are vicariously liable for Mr. Berman's copyright infringement because they had the right and ability to supervise Mr. Berman's conduct, and that they "received a direct financial interest in the profits or a benefit" from Mr. Berman's activities.  Amended Compl. ¶ 268.  In addition, SecureInfo alleges that Defendants Telos, Xacta, Mr. Wilson and Mr. Tracy received, downloaded, copied onto their computer system, and viewed on their screen displays or produced outputs of RMS, RMS manuals and guides, and related materials and database content including the RTM, the C&A Package, the MTP, the SSP, the NIST Questionnaire, and the RMS QuickStart 3.2.06 Guide.  SecureInfo

alleges that when entire works were not copied, these defendants copied significant qualitative or quantitative portions of SecureInfo's copyrighted works.

Plaintiff alleges that, as a result of the copyright infringement, it has incurred damages, including the loss of competitive advantage, uncompensated use of intellectual property, and higher selling costs.  In addition, SecureInfo alleges that it will suffer damages of $20 million as a result of the infringement.  Furthermore, SecureInfo asserts that it is entitled to statutory damages pursuant to 17 U.S.C.A. § 504.

*Count V: Fraud and Deceit Against Mr. Berman*

In Count V, SecureInfo alleges that Mr. Berman had the specific intent to defraud SecureInfo and to provide Defendants Telos, Xacta, Mr. Tracy, Mr. Wilson, and Mr. Berman with access to RMS.  Mr. Berman made false representations to SecureInfo that he wished to obtain a license to use RMS for use of a contract with the General Services Administration when he actually wanted it to perform a comparative analysis of RMS for Defendants Telos and Xacta.  SecureInfo alleges that Mr. Berman intentionally and knowingly misled SecureInfo and that SecureInfo relied upon the misrepresentations made by Mr. Berman in granting him a license to obtain RMS.  Similarly, SecureInfo alleges that Mr. Berman made false representations about the scope of his use of

16

SecureInfo's product to SecureInfo in a January 31, 2005 email,
in a February 25, 2005 facsimile transmittal of an executed
Software License and Support Agreement, and in an April 20, 2005
phone call.  As a result of these misrepresentations, SecureInfo
alleges that it "has been injured because Defendants Telos,
Xacta, Tracy and Wilson have now learned and will retain
Plaintiff SecureInfo's... copyright-protected information which
they may use to cause Plaintiff SecureInfo financial loss in
excess of $20 million."  Amended Compl. ¶ 310.

> *Count VI: Conspiracy to Fraudulently Obtain Trade Secrets By
> Deceit and Tortious Interference with Contract against
> Defendants Telos, Xacta, Wood, Tracy, Wilson, and Berman*

SecureInfo alleges that Mr. Berman knowingly and willingly
entered into an agreement with Defendants Telos, Xacta, Mr. Wood,
Mr. Tracy, and Mr. Wilson unlawfully to obtain SecureInfo's trade
secrets.  In addition, all the defendants participated in overt
acts to further the conspiracy of obtaining RMS and of tortiously
interfering with one or more of SecureInfo's contracts with
SecureInfo's customers.  Mr. Berman willingly and knowingly
agreed with Telos, Xacta, Mr. Wood, Mr. Tracy, and Mr. Wilson to
attempt to copy RMS and associated information from one or more
of SecureInfo's customers.  SecureInfo further alleges: "[i]f one
of Plaintiff SecureInfo's customers gave Defendants" a copy of
RMS or access to trade secret information, that "would be in

17

breach" of that customer's contracts with SecureInfo.  Amended

Compl. ¶ 325.  That breach "would cause injury" to SecureInfo by

disclosing RMS and trade secret information to all the

defendants." *Id*. at ¶ 326.


> *Count VII: Common Law Tortious Interference with Contract or*
> *Business Relationship Against Defendants Telos, Xacta, Mr.*
> *Tracy, Mr. Wilson, and Mr. Berman*

SecureInfo alleges that Defendants Telos, Xacta, Mr. Tracy,

Mr. Wilson, and Mr. Berman interfered with the contractual

relationship between SecureInfo and Mr. Berman's company, BAI, by

violating the requirements of the Non-Disclosure Agreement, the

SLSA, and the Pilot License Agreement signed by Mr. Berman on

behalf of BAI.  Amended Compl. ¶¶ 331-38.  As a result of these

defendants' actions, SecureInfo has "suffered a loss occasioned

by the unauthorized disclosure of its proprietary trade secret

information," and it suffered damages in the amount of $20

million.  *Id.* at ¶ 338.


> *Count VIII: Violation of the Racketeer Influenced Corrupt*
> *Organization Act, 18 U.S.C.A. § 1961, against Defendants*
> *Telos, Xacta, Mr. Tracy, Mr. Wilson, and Mr. Berman*

SecureInfo alleges that BAI is an "enterprise," and that

Defendants Telos, Xacto, Mr. Tracy, Mr. Wilson, and Mr. Berman

are "persons" within the meaning of 18 U.S.C.A. § 1961,

Defendants Telos, Xacta, Mr. Tracy, Mr. Wilson, and Mr. Berman

are associated with or employed by the "BAI Enterprise," and they
participate in the affairs of the BAI Enterprise through a
pattern of racketeering activity.  The BAI Enterprise provides
consulting services to customers, including Telos and Xacta,
about compliance with United States government agency
regulations, and it affects interstate commerce through its
actions.

According to the plaintiff, the defendants comprising the
BAI Enterprise committed at least two predicate acts under the
RICO statute.  *See* 18 U.S.C.A. § 1961.  Plaintiff alleges that
the racketeering activities that Defendants Telos, Xacta, Mr.
Tracy, Mr. Wilson, and Mr. Berman (collectively, "Telos RICO
Defendants") engaged in were "open and continuing in nature" and
were intended to fraudulently obtain trade secret, proprietary
information from the plaintiff and from Defendant Telos' and
Xacta's competitors generally, and to cause harm to SecureInfo
and injure its ability to compete with Xacta and Telos.  Amended
Compl. ¶ 353.  According to Plaintiff,

> [b]ecause the purposes of the Telos RICO Defendants'
> criminal acts include obtaining trade secrets belonging to
> Plaintiff SecureInfo and other competitors of Telos and
> Xacta, and because a further purpose of the Telos RICO
> Defendants' actions is to injure Plaintiff SecureInfo's
> ability to compete with Telos and Xacta, Plaintiff
> SecureInfo is threatened with the likelihood of future
> criminal activity by the Telos RICO Defendants.

*Id.* ¶ 354.  SecureInfo alleges that the predicate acts the Telos
RICO Defendants engaged in were criminal copyright infringement

in violation of 18 U.S.C.A. § 2319 and 17 U.S.C.A. § 506, mail
fraud in violation of 18 U.S.C.A. § 1341, wire fraud in violation
of 18 U.S.C.A. § 1343, interstate transmission of property
obtained by fraud in violation of 18 U.S.C.A. § 2314, and
possession of property obtained by fraud in violation of 18
U.S.C.A. § 2319. Plaintiff alleges that through these acts, the
Telos RICO Defendants participated in the conduct of the affairs
of the BAI Enterprise through a pattern of racketeering activity,
violating 18 U.S.C.A. § 1962(c), and injured SecureInfo, giving
rise to a right of action under 18 U.S.C.A. § 1964.

> *Count IX: Combination to Injure Plaintiff SecureInfo in its
> Reputation, Trade or Business, Va. Code Ann. § 18.2-499
> (Michie 2004 & Supp. 2005), against Defendants Mr. Berman,
> Telos, Xacta, Mr. Wood, Mr. Tracy, and Mr. Wilson*

Plaintiff alleges that Defendants Mr. Berman, Telos, Xacta,
Mr. Wood, Mr. Tracy, and Mr. Wison acted in concert to injure
SecureInfo in its business, that Plaintiff has been injured in
its business, and that plaintiff has suffered damages as a result
of the disclosure of the RMS package to the defendants, and
because these defendants tortiously interfered with SecureInfo's
contract with BAI.  Amended Comp. ¶¶ 567-74.

> *Count X: Violation of the Virginia Computer Crimes Act, Va.
> Code Ann. § 18.2-152.3, against Defendants Telos, Xacta, and
> Mr. Wilson*

SecureInfo alleges that Defendants Telos, Xacta, and Mr.
Wilson accessed RMS software without permission and downloaded it
to use it to compete directly with SecureInfo.  The value of the
proprietary information obtained by Defendant Mr. Wilson by
viewing and/or downloading the contents of RMS exceeds $500.  As
a result, SecureInfo suffered damages including the loss of
competitive advantage, uncompensated use of its intellectual
property, and higher selling costs.  "SecureInfo believes that
Defendant Telos', Xacta's and Wilson's use, copying and
downloading of SecureInfo's RMS system will cost SecureInfo $20
million."  Amended Compl. ¶ 589.

*Count XI: Violation of the Uniform Trade Secrets Act of
Virginia, Va. Code Ann. § 59.1-338, against Defendants
Telos, Xacta, and Mr. Wilson*

SecureInfo alleges that RMS constitutes a trade secret as
defined in Va. Code Ann. § 59.1-336 and that Defendants Telos,
Xacta, and Mr. Wilson misappropriated SecureInfo's trade secrets
by illegally gaining access to and downloading or copying RMS
from the BAI server and by receiving trade secret information
from Mr. Berman.  SecureInfo alleges that these defendants did so
willfully, purposefully, and intentionally, and Plaintiff has
been harmed as a result, suffering the loss of competitive
advantage, uncompensated use of its intellectual property, and
higher selling costs.  In addition, SecureInfo believes that

21

these actions have injured SecureInfo in the amount of $20 million.  Plaintiff seeks actual damages it has and will sustain as a result of these defendants' actions, as well as punitive damages and attorneys' fees.  Amended Compl. ¶¶ 591-602.

*Count XII: Common Law Trespass to Chattels, Against Defendants Telos, Xacta, and Mr. Wilson*

By gaining unauthorized access to and downloading the contents of RMS, SecureInfo alleges that Defendants Telos, Xacta, and Mr. Wilson intentionally interfered with SecureInfo's possessory interest in its confidential proprietary information for their own enrichment.  As a result, these defendants caused damage to SecureInfo by affecting its exclusive right of possession over its property and contributing to the loss of actual and potential customers and goodwill, injury to its reputation, and diminution in the value of its confidential information.  Amended Compl. ¶¶ 603-07.

*Count XIII: Common Law Detinue, Against Defendants Telos, Xacta, and Mr. Wilson*

SecureInfo alleges that by gaining unauthorized access to and downloading the contents of SecureInfo's RMS, Defendants Telos, Xacta, and Mr. Wilson intentionally interfered with SecureInfo's possessory interest in its confidential proprietary information.  SecureInfo alleges that it is the owner of the

22

downloaded data and is entitled to immediate possession of it.
As a result of these defendants' actions, Plaintiff suffered the
loss of competitive advantage, uncompensated use of its
intellectual property, and higher selling costs.  SecureInfo
believes the defendants' behavior will cost it $20 million, and
seeks punitive damages.  Amended Compl. ¶¶ 608-19.


***Telos Defendants' Motion to Dismiss Counts I-IV and VI-XIII of
the Amended Complaint***

_____The Telos Defendants argue that Counts I through III,
arising under the Computer Fraud and Abuse Act ("CFAA") should be
dismissed because (1) Plaintiff has not alleged "loss" as defined
by the statute, (2) the Telos Defendants had permission to access
BAI's computer from BAI, and (3) Plaintiff does not allege that
the defendants intentionally accessed a protected computer
without authorization, rather that they exceeded the scope of the
authority they were granted by BAI, an action not covered by 18
U.S.C.A. § 1030(a)(5)(A)(iii).  The Telos Defendants further
argue that Count IV, for copyright infringement, should be
dismissed because (1) Plaintiff did not secure copyright
protection for display screens or output forms generated by RMS,
and (2) the allegedly copied materials did not comprise a
substantial part of SecureInfo's program as a whole.  The Telos
Defendants seek to dismiss Count VIII, the RICO count, because
there is no pattern of racketeering conduct within the meaning of

23

the statute, and the Telos Defendants did not control the alleged enterprise.  Finally, the Telos Defendants seek to dismiss Counts VI-VII and IX-XIII, the Virginia law claims, because, in the absence of any federal claim, the Court should not exercise jurisdiction over this case.  In any case, argue the Telos Defendants, Counts VI and IX should be dismissed because an entity cannot conspire or combine with its own agent under Virginia law.  Furthermore, Count VII should be dismissed because a party cannot interfere with its own contract, nor can a third party interfere with a contract alleged to have been fraudulently induced under Virginia law, and Mr. Berman was BAI's employee at the time he allegedly interfered with the BAI-SecureInfo licensing agreements.  The Telos Defendants argue that Count X should be dismissed because the complaint does not allege unauthorized access to BAI's computer.  Also, argue the Telos Defendants, Counts X, XII, and XIII are preempted by copyright law.  The Telos Defendants make no arguments in favor of their motion to dismiss Count XI.

### Defendant Mr. Berman's Motion to Dismiss Counts IV-IX

For those counts that Mr. Berman is named a defendant that he shares with the Telos Defendants, Mr. Berman moves to dismiss on the same bases as the Telos Defendants, that is, Counts IV, VI, VII, VIII, and IX.  Count V (fraud and deceit) is pled only

24

against Mr. Berman.  Mr. Berman argues that any right of recovery
that SecureInfo may have is founded on a breach of contract
theory, not upon a claim for fraud.  Here, Mr. Berman argues, any
duty that Mr. Berman had to SecureInfo arises pursuant to the
license agreement between BAI and SecureInfo, and consequently,
under Virginia law, the plaintiff can state no claim for tort.
In addition, Mr. Berman argues that SecureInfo's claim for fraud
and deceit should be dismissed because SecureInfo fails to allege
damages flowing from Mr. Berman's purported fraud, as opposed to
from breach of contract.


### *Plaintiff's Response*

Plaintiff asserts that it properly alleged "loss" and the
other elements required to sustain a civil action under the CFAA.
As to the copyright claim, Plaintiff argues that its forms enjoy
the copyright protection of the copyrighted RMS database since
they are all interconnected and contain information and text
drawn directly from the RMS database.  Pl.'s Opp'n Defs.' Mot.
Dismiss (hereinafter "Pl.'s Opp'n") at 14 (citing *Video Pipeline,
Inc. v. Buena Vista Home Entertainment, Inc.*, 275 F.Supp.2d 543,
556 (D.N.J. 2003) and 17 U.S.C.A. § 101).  In addition, it argues
that the QuickStart Guide has independent copyright protection,
and the defendants have made no meritorious arguments to rebut
the presumption of copyright protection for it.  As to the RICO

count, Plaintiff asserts that it properly alleged that the RICO defendants, that is Defendants Xacta, Telos, Mr. Tracy, Mr. Wilson, and Mr. Berman, engaged in an open-ended scheme and that they utilized the BAI enterprise to accomplish their goals.  On the fraud and deceit claim, SecureInfo argues that Mr. Berman was not sued for breach of contract, and therefore, is not prevented from suing for fraud in the inducement.  Furthermore, it argues that fraud in the inducement is not a contract based claim, but rather an independent tort.  SecureInfo did not address the question of damages flowing from the alleged fraud and deceit in its briefs.  SecureInfo argues that intracorporate immunity doctrine should not force the Court to dismiss its conspiracy claims because it is permitted to plead alternative theories of recovery under Federal Rule of Civil Procedure 8.  Count VII, posits SecureInfo, states a valid claim for tortious interference even though Mr. Berman was an employee of BAI at the time he signed licensing agreements with SecureInfo on behalf of BAI, because when he tortiously interfered, he was no longer acting within the scope of his agency as a BAI employee.  SecureInfo argues that Counts X, XII, and XIII are not preempted by the Copyright Act, and that it properly alleges the elements of these claims.

## II. DISCUSSION

## A. Standard of Review

A Federal Rule of Civil Procedure 12(b)(6) motion should not be granted unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of the plaintiff's claim that would entitle the plaintiff to relief.  FED. R. CIV. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true.  *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Conclusory allegations regarding the legal effect of the facts alleged need not be accepted.  *See Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).  Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendants to prepare a fair response.  *Conley*, 355 U.S. at 47.

## B. Analysis

### *FEDERAL LAW CLAIMS*

### Counts I-III: Computer Fraud and Abuse Act

The Court grants Defendants' motion to dismiss the Computer Fraud and Abuse Act claims because, according to the facts alleged by SecureInfo, Defendants Telos, Xacta, and Mr. Wilson

("CFAA Defendants") did not access a computer without authorization or in excess of authorized access, as required to state a claim under the statute.[2]  *See* 18 U.S.C.A. §§ 1030(a)(2), (a)(5)(B), (a)(4), (a)(5)(A)(iii).  The CFAA is a criminal statute that allows prosecution of civil actions if certain prerequisites are satisfied.  *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F.Supp.2d 468, 471-72 (S.D.N.Y. 2004); 18 U.S.C.A. § 1030(g).  Plaintiff has alleged that the acts of Telos, Xacta, and Mr. Wilson violated §§ 1030(a)(2)(C), (a)(4), (a)(5)(A)(iii), (a)(5)(B), and (g) of the CFAA.  Section 1030(a)(2)(c) prohibits the intentional accessing of a computer "without authorization or exceed[ing] authorized access" to obtain information from a "protected computer," if the conduct involved an interstate or foreign communication.  § 1030(a)(2)(C).  § 1030(a)(4) criminalizes the activity of

> [w]hoever knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5000 in any 1-year period.

---

[2]  The Court declines to address Defendants' arguments in favor of dismissing Plaintiff's CFAA claims because Plaintiff fails properly to allege "loss" or to meet the jurisdictional threshold requirement since the Court dismisses the CFAA claims for failure to meet the "unauthorized access" or "exceeding authorized access" requirements of the statute.  The Court makes no conclusions at this time about the merits of those arguments.

*Id.* In relevant part, §§ 1030 (a)(5)(A)(iii) and 1030(a)(5)(B) indicate that whoever intentionally accesses a protected computer without authorization and causes consequential damage in the amount of at least $5000 in value is subject to punishment. §§ 1030 (a)(5)(A)(iii), (a)(5)(B). A "protected computer" is a computer "used in interstate or foreign commerce or communication...." § 1030(e)(2)(B). The phrase "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter." § 1030(e)(6). Congress did not define "unauthorized access" by statute.

The Court grants the defendants' motion to dismiss the CFAA claim because Plaintiff fails to allege that the CFAA defendants had "unauthorized access" to the BAI server or exceeded authorized access, as required by the statute. *See* §§ 1030(a)(2)(C), (a)(4), (a)(5)(A)(iii), (a)(5)(B), and (e)(6). Plaintiff repeatedly alleges that it signed various licensing agreements with Mr. Berman, giving him narrowly restricted access to RMS and RMS materials. *See, e.g.,* Amended Compl. ¶¶ 92-99. Mr. Berman then allowed the CFAA defendants access to the BAI server to view and download SecureInfo's RMS materials, in violation of the license agreements. *See, e.g., id.* at ¶ 204 (referring to BAI or Mr. Berman "purportedly authoriz[ing]"

29

access to the BAI server); *see also id.* at ¶ 265 (alleging that "Defendants Telos, Xacta, Wilson and/or Tracy directed and paid Berman to obtain a copy of the RMS, RMS database content, RMS manuals and guides, and RMS related material and to permit access to [these] Defendants...").  In other words, Plaintiff makes clear throughout its Amended Complaint that Mr. Berman gave various defendants permission or authorization to use the BAI server and view what was contained therein. *See In re America Online, Inc. Version 5.0 Software Litigation*, 168 F.Supp.2d 1359, 1370-71 (S.D.Fla. 2001) (citing legislative history of subsections 1030(a)(5)(B) and (C) for the proposition that these provisions "are intended to apply to outsiders who access a computer," not to "insiders" who access individuals' computers with their permission to do so).  Furthermore, Plaintiff's Amended Complaint does not allege facts that the defendants "exceeded authorized access" within the meaning of the statute. Mr. Berman gave the CFAA defendants access to BAI's server and to the information on the server; consequently, the CFAA defendants were "entitled to obtain" information on the server because Mr. Berman explicitly allowed them access to it.  *See* § 1030(e)(6). Even if Mr. Berman allowed the defendants access to the BAI server and SecureInfo's materials in violation of the license agreements, under his grant of authority to the defendants, they were entitled to obtain the information on the server.

The cases cited by SecureInfo to refute Defendants' argument that SecureInfo's CFAA claims are barred because SecureInfo fails to allege unauthorized access or access in excess of authority as required by the statute are unpersuasive to the Court because none involve a third party's access to software on a computer due to breach of a software license by a licensee.  First, Plaintiff cites *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001) for the proposition that the CFAA applies to parties who claim to have authority from someone not authorized to give it or who go beyond the granted authorization.  In that case, the First Circuit Court of Appeals held that a defendant, the plaintiff's former employee, exceeded authorized access within the meaning of the CFAA when he passed along information to a consultant to prepare "scraper" software to glean pricing information off the plaintiff's website.  *Id.* at 579-80.  The Court relied on a broad confidentiality agreement signed by the former employee prohibiting him from disclosing any of the plaintiff's confidential or proprietary information in deciding that the former employee exceeded authorized access.  *Id.* at 582. In the case before this Court, however, Plaintiff is suing defendants Xacta, Telos, and Mr. Wilson on the CFAA claims, not Mr. Berman.  Had the plaintiff sued Mr. Berman for exceeding authorized access, the First Circuit's decision may have applied. Since Mr. Berman, however, gave Defendants Telos, Xacta, and Mr.

31

Wilson permission to use his server to access information, the
CFAA defendants did not exceed authorized access within the
meaning of the statute.  Second, Plaintiff cites *Theofel v.
Farey-Jones*, 341 F.3d 978 (9th Cir. 2003), *amended by* 359 F.3d
1066 (9th Cir. 2004), *cert. denied*, 125 S.Ct.48 (2004) and
*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*,
119 F.Supp.2d 1121 (W.D.Wa. 2000) for the proposition that
Plaintiff's position as a third party does not render it
powerless to protect its property on BAI's server, although
neither case involves the breach of a software license agreement.
In *Shurgard*, the plaintiff alleged that the defendant hired away
its key employees and that some of these employees, while still
working for the plaintiff, used its computers to send trade
secrets to the defendant via e-mail.  119 F.Supp.2d at 1122.  The
United States District Court for the Western District of
Washington held that the former employees were without
authorization to access the plaintiff's computer when they
obtained and sent proprietary information to the defendant via e-
mail, they were acting as the defendant's agent, and the
defendant could be held liable for their unauthorized actions.
*Id.* at 1125.  In *Theofeld*, although the Ninth Circuit Court of
Appeals explicitly held that the CFAA applies to unauthorized
access of a third party's computer, the case arose from a
discovery dispute where a litigant issued an overly broad

subpoena and published privileged and personal emails on a semi-public website, a factual context easily distinguishable from the one at hand.  359 F.3d at 1078.  In essence, the plaintiff is asking the Court to hold that every breach of a computer software license agreement allows the licensing party to recover damages against a non-party to the software license under the CFAA, even though it cites no cases that so hold.  The Court declines to read the statute as broadly as suggested by the plaintiff.  Consequently, the Court grants Defendants' motion to dismiss the CFAA claims because Plaintiff fails to allege that Defendants accessed BAI's server without authorization or in excess of authority.


**Count IV: Copyright Infringement**

The Court denies Defendants' motion to dismiss the copyright claim on the basis that forms copied by the Telos Defendants are not copyrightable.  The Court denies Defendants' motion to dismiss the copyright claims as to the QuickStart Guide because it is independently copyrighted and Plaintiff alleges that it was copied, satisfying the requirements to state a claim for copyright infringement pursuant to the Copyright Act.  *See* Amended Compl. ¶¶ 142-75, 269; *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The Court denies

the defendants' motion to dismiss the copyright claim as to the other outputs of RMS because, taking the plaintiff's allegations as true, as required by Federal Rule of Civil Procedure 12(b)(6), the forms are protected by the Copyright Act.  In addition, the Court denies the defendants' motion to dismiss the copyright claim because Plaintiff alleges that the forms copied by the Telos Defendants were a substantial part of RMS, and on a 12(b)(6) motion, the Court must take the plaintiff's allegations as true.

To state a claim for copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361.  A certificate of registration from the United States Copyright Office is *prima facie* evidence of the validity of a copyright, and a defendant bears the burden of overcoming that presumption.  *Gates Rubber Co. v. Bando Chem. Ind., Ltd.*, 9 F.3d 823, 831-32 (10th Cir. 1993) (citations omitted); 17 U.S.C.A. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate").  If a plaintiff shows that it possesses a valid copyright, it must next show that a defendant "unlawfully appropriated protected portions" of the copyrighted material.

34

*Gates Rubber*, 9 F.3d at 832.   In other words, the plaintiff must show that the defendant copied portions of the plaintiff's program, and that the elements that were copied are "protected expression and of such importance to the copied work that the appropriation is actionable."   *Id.* (citing, *inter alia*, 1 MELVILLE B. NIMMER, NIMMER ON COPYRIGHT § 13.01[B], at 13-8 to 13-15 (1993)). Merely because a work is copyrighted does not mean that every part of that work is copyrighted.   *See Feist*, 499 U.S. at 348.

*Are the Forms Allegedly Copied by the Telos Defendants Copyrightable Elements of SecureInfo's Software?*

   *Quickstart Guide*

   The Court denies Defendants' motion to dismiss Plaintiff's claim for copyright infringement as to the QuickStart Guide because Plaintiff states a claim for copyright infringement. Plaintiff is entitled to a presumption of copyright protection since it has a certificate of registration for the QuickStart Guide.   Amended Compl. ¶ 255 (RMS 3.2.06 QuickStart Guide covered by copyright registration TXu 1-209-292); *see Gates Rubber*, 9 F.3d at 831-32 (citations omitted); *see also* 17 U.S.C.A. § 410(c) ("In any judicial proceedings the certificate of a registration... shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").   Defendants have raised no meritorious arguments to overcome this presumption.   Furthermore, manuals conveying a

detailed procedure to accomplish a specific goal are protected by
the Copyright Act.   *See Williams v. Arndt*, 626 F.Supp. 571, 578
(D.Mass. 1985) (holding that a stock trader manual was protected
by copyright because it was a "detailed, step-by-step procedure
or process to accomplish a specific desired result") (citing
*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240,
1250-52 (3d Cir. 1983) and 1 NIMMER ON COPYRIGHT § 2:03[D]
(1984)("[I]f a given 'procedure' is reduced to written form, this
will constitute a protectable work of authorship, so as to
preclude the unlicensed copying of 'the expression' of the
procedure, even if the procedure *per se* constitutes an
unprotectable 'idea.'")).  Consequently, because Defendants do
not rebut the presumption that the QuickStart Guide is copyright
protected, and Plaintiff alleges that the Telos Defendants copied
and distributed the guide, the Court denies Defendants' motion to
dismiss Plaintiff's copyright claim as to the QuickStart Guide.

> *RMS Outputs: Master Test Procedures of the C&A Package
> ("MTP"), RTM from the C&A Package ("RTM"), and the 3-System
> Security Plan Master Document ("SSP")*

The Court denies Defendants' motion to dismiss the copyright
claims as to the MTP, RTM, and SSP, because taking the
plaintiff's well-pleaded allegations as true, these outputs are

copyrightable materials.[3]  Plaintiffs are entitled to the
presumption of copyright protection for items registered with the
United States Copyright Office.  *See Gates Rubber*, 9 F.3d at 831-
32 (citations omitted); *see also* 17 U.S.C.A. § 410(c) ("In any
judicial proceedings the certificate of a registration... shall
constitute prima facie evidence of the validity of the copyright
and of the facts stated in the certificate.").  A defendant,
however, may rebut the presumption of copyright protection
afforded by a certificate of registration.  *Gates Rubber*, 9 F.3d
at 831-32.  The Copyright Act protects "original works of
authorship fixed in any tangible medium of expression" including
"literary works."  17 U.S.C.A. § 102(a)(1).  "Literary works" are
"works... expressed in words, numbers, or other verbal or
numerical symbols or indicia."  *Id.* § 101.  By amendment in 1980,
Congress explicitly provided copyright protection to computer
programs.  180 A.L.R. Fed. 1 (2005); 17 U.S.C.A. § 101 (defining
a "computer program" as "a set of statements or instructions to
be used directly or indirectly in a computer in order to bring
about a certain result").  Literal elements of computer programs,
such as source and object codes, are entitled to copyright

---

[3] Although the Telos Defendants have attached what appears
to be a sample RTM to their reply brief, the Court has no copy of
an MTP or SSP before it.  Furthermore, on a 12(b)(6) motion, the
Court must take the well-pleaded allegations of *the complaint* as
true and determine whether the plaintiff states a cognizable
claim. Fed. R. Civ. P. 12(b)(6); *Conley*, 355 U.S. at 45-46.

37

protection.  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982
F.2d 693, 702 (2d Cir. 1992).  Copyright protection may also
extend beyond a work's strictly textual form to its nonliteral
elements.  *Id.* at 701 (stating that nonliteral components include
"general flow charts... more specific organization of inter-
modular relationships, parameter lists, and macros"); *see also*
180 A.L.R. Fed. 1 (2005) (stating that nonliteral elements of a
computer program "are those aspects that are not reduced to
written code, and that make up the structure, sequence, and
organization of a program"); *see, e.g., General Universal Sys. v.
Lee*, 379 F.3d 131, 142 (5th Cir. 2004) (explaining that
structure, sequence, organization, user interface, screen
displays, and menu structures are nonliteral elements entitled to
copyright protection).  Nonliteral elements of a computer program
may receive copyright protection even if they are individually
unprotectable, if they are compiled in a unique or creative way.
*See, e.g., Positive Software Solutions v. New Century Mortgage
Corp.*, 259 F.Supp.2d 531 (N.D.Tex. 2003) (holding data query
structure used in software which interacted with mortgage loan
seller's database was copyrightable).

The copyright protection for an original work of authorship
does not, however, extend to "any idea, procedure, process,
system, method of operation, concept, principle, or discovery,
regardless of the form in which it is described, explained,

illustrated or embodied in such work." 17 U.S.C.A. § 102(b).
Also, to receive copyright protection, a work must be "original,"
or possess at least a "*de minimis* quantum of creativity." *Feist*,
499 U.S. at 363.  For example, the Copyright Act does not protect
from copying "a collection of facts that are selected,
coordinated, and arranged in a way that utterly lacks
originality." *Id.* at 364 (holding that the plaintiff's white
pages phone book arranging names in alphabetical order and
listing corresponding phone numbers was thoroughly lacking in
originality).  Also excluded from the purview of the Copyright
Act are works of the United States Government.  17 U.S.C.A. §
106.   The question whether the elements of a program that have
been copied are protected expression and of such importance to
the copied work that the appropriation is actionable is a "mixed
issue of fact and law." *Gates Rubber*, 9 F.3d at 832 (citing
Nimmer on Copyright § 13.01[B], at 13-8 to 13-15 (1993)).

The Court denies Defendants' motion to dismiss the copyright
claims as to RTM, MTP, and SSP, because the plaintiff properly
alleges facts sufficient to support that they are copyrightable
materials, and the Court can only consider the plaintiff's
allegations, and no outside evidence, on a 12(b)(6) motion.
Plaintiff enjoys the presumption of copyright protection because
it has a certificate of registration for RMS "with content."
Amended Compl. ¶ 254, Ex. B.  Plaintiff alleges that the RTM

contains a matrix of the regulations and requirements a customer
is subject to and the test plan the customer must accomplish to
achieve compliance.  The MTP is a template for all the tests a
customer must pass to comply with relevant regulations.  The SSP
is a template to assist the customer in securing its entire
system network.  Even if these outputs are purely arrangements of
uncopyrightable facts, if they are arranged in a manner that
demonstrates a "minimal degree of creativity, the author may
claim protection in that selection and arrangement." *Feist*, 499
U.S. at 348.  Assuming *arguendo* that the contents of the MTP,
SSP, and RTM are mere uncopyrightable facts, they may still be
arranged in a manner that exhibits enough creativity for the
selection and arrangement of those facts to be copyrightable.
Consequently, at this juncture, on a 12(b)(6) motion, the Court
denies the defendants' motion to dismiss for failure to show the
RTM, SSP, and MTP are not covered by the Copyright Act.


*Were the Forms Allegedly Copied by the Telos Defendants a
Substantial Part of RMS?*

The Court denies the defendants' motion to dismiss the
copyright claim because Plaintiff alleges that the forms copied
by the Telos Defendants were a substantial part of RMS, and on a
12(b)(6) motion, the Court must take the plaintiff's allegations
as true.  In deciding whether copyright infringement occurred, a
court must decide whether the protectable portions of an original

40

work that have been copied comprise a "substantial part of the original work–i.e. matter that is significant in the plaintiff's program." *Gates Rubber*, 9 F.3d at 839 (citations omitted).  A court must conduct a primarily qualitative analysis in making this assessment, and must do so on a case-by-case basis. *Id.* (citations omitted).  Plaintiff alleges facts that support the proposition that RMS outputs form a substantial part of the copyrighted RMS database.  For example, Plaintiff alleges that "RTM is the most important of the RMS outputs to SecureInfo," Amended Compl. ¶ 23, and that all the materials downloaded by Defendant Mr. Wilson "contained the most vital and competitively sensitive proprietary and trade secret information... contained in SecureInfo's RMS system." *Id.* ¶ 176.  The Court must deny the defendants' motion to dismiss because it cannot conduct a factual inquiry into the truth of Plaintiff's allegations on a 12(b)(6) motion.

## **Count VIII: RICO**

The Court grants Defendants' motion to dismiss Plaintiff's RICO claim because Plaintiff does not properly allege a "pattern of racketeering activity." 18 U.S.C.A. § 1962(c); *see also Eplus Tech., Inc. v. Aboud*, 313 F.3d 166, 181-82 (4th Cir. 2002) (referring to the "continuity plus relationship" test).  18 U.S.C.A. § 1962(c) states that

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the activities
> of which affect, interstate or foreign commerce, to conduct
> or participate directly or indirectly, in the conduct of
> such enterprise's affairs through a pattern of racketeering
> activity or collection of unlawful debt.

*Id.* In essence, RICO creates civil liability for persons
engaging in a pattern of racketeering activity. *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)(citing 18 U.S.C.A. §§
1962 and 1964).  "Racketeering activity" is defined by statute to
include any number of predicate acts.  *See* 18 U.S.C.A. §
1961(1)(B) (including mail and wire fraud).  A "pattern of
racketeering activity" requires at least two predicate acts
having occurred within ten years of each other and after the
effective date of the statute.  *See* 18 U.S.C.A. § 1961(5).  To
succeed on a RICO claim, a plaintiff must show that "the
predicate acts are related and that they constitute or pose a
threat of continued criminal activity."  *Al-Abood*, 217 F.3d at
238 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S.
229, 237-39 (1989)); *see also Eplus*, 313 F.3d at 181-82
(referring to the "continuity plus relationship test").
Determining whether a pattern of racketeering activity exists is
a "commonsensical, fact-specific inquiry" and no mechanical
formula exists to assess whether the requirement has been met.
*Eplus*, 313 F.3d at 182.

To show predicate acts are related, a plaintiff must show a
"relationship between the predicates," or "the same or similar

purposes, results, participants, victims, or methods of
commission, or otherwise are interrelated by distinguishing
characteristics and are not isolated events." *H.J., Inc.*, 492
U.S. at 239-40.  "Continuity" is a "closed- and open-ended
concept, referring either to a closed period of repeated conduct,
or to past conduct that by its nature projects into the future
with a threat of repetition." *Id.* at 241 (quoting 18 U.S.C.A. §
3575(e)).  A party may demonstrate continuity "over a closed
period by proving a series of related predicates extending over a
substantial period of time," but "predicate acts extending over a
few weeks or months and threatening no future criminal conduct do
not satisfy this requirement." *Id.* at 242 (pointing out that
Congress was concerned with "long-term" criminal conduct in
enacting RICO).  If a RICO claim is brought before continuity can
be established in this manner, "liability depends on whether the
*threat* of continuity is demonstrated." *Id.* (citing S.Rep. No.
91-617, at 158).  In *H.J., Inc.*, the Supreme Court provided some
examples of threats of long-term criminal activity that would
satisfy the continuity requirement of RICO: if a hoodlum sells
"insurance" to neighborhood shopkeepers and tells them he will
collect premiums every month to continue their coverage, the
continuity requirement is met because "a specific threat of
repetition extend[s] indefinitely into the future." *Id.* at 242.
Also, a plaintiff may plead threat of continuity by showing that

43

the predicate acts are part of an ongoing entity's regular way of conducting a business not existing for criminal purposes or of conducting or participating in an ongoing RICO "enterprise."  *Id.* at 243.

Under Fourth Circuit caselaw, civil RICO liability is "reserved...for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'"  *Al-Abood*, 217 F.3d at 238 (quoting *Menasco*, 886 F.2d at 684).  For example, the Fourth Circuit hesitates to find civil RICO liability for a "pattern of racketeering activity" predicated on acts of mail and wire fraud because of the sheer scope of fraud cases involving use of the mail and wires.  *Id.*  RICO claims are not to be used for "garden-variety fraud claims better prosecuted under state law," but rather for "cases involving a more serious scope of activity."  *Id.* (citations omitted).  The pattern requirement helps to screen out the garden-variety fraud claims. *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989)("[t]he pattern requirement... thus acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions... are not eclipsed or preempted").  In distinguishing between "garden-variety" fraud and RICO fraud, the

Fourth Circuit has looked to what predicate acts are alleged, the frequency of those acts, and the number of victims involved, as well as the continuity requirement.  *See id.* at 238 (citations omitted).

Plaintiff's Amended Complaint does not state a claim for a violation of RICO because the factual allegations do not meet the requirements for a "pattern of racketeering activity." 18 U.S.C.A. § 1962(c); *see also H.J., Inc.*, 492 U.S. at 241. Instead, Plaintiff's claim is one for "garden-variety fraud," *Al-Abood*, 217 F.3d at 238, and Plaintiff does not properly allege continuity.  Plaintiff's alleged facts do not establish "past conduct that by its nature projects into the future with a threat of repetition."  *See H.J., Inc.*, 492 U.S. at 241 (quoting 18 U.S.C.A. § 3575(e)).  In essence, Plaintiff's factual allegations establish that the Telos RICO defendants sought to fraudulently induce one victim, SecureInfo, during a period spanning from January 2005 until April 2005, for a narrow and specific purpose, that is, to turn over proprietary information and to use it to compete with SecureInfo.  The Fourth Circuit held that a pattern of racketeering activity was not established in cases like this one.  For example, in *Menasco,* the Fourth Circuit held the plaintiffs failed to satisfy the continuity requirement for civil RICO liability when the defendants' actions were narrowly directed towards a single fraudulent goal, involved a limited

45

purpose---only one perpetrator and only one set of victims---and took place over approximately one year.  886 F.2d at 684 ("[c]learly, these acts do not constitute 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'").  Similarly, the Fourth Circuit upheld judgment as a matter of law for defendants because the allegations were "not sufficiently outside the heartland of fraud cases to warrant RICO treatment" when the main predicate acts were mail and wire fraud, although they were related and involved three discrete schemes spanning several years, there was only one victim of the fraud, and the alleged scheme was narrowly focused. *Al-Abood*, 217 F.3d at 238.  Furthermore, this case is easily distinguishable from cases where the Fourth Circuit held that a pattern of racketeering activity was established.  For example, the Fourth Circuit upheld a finding of civil RICO liability when the defendants were charged with organizing several credit scams, or "bust-out" schemes to defraud numerous computer equipment suppliers, and bankrupting the defendants' own creditors.  *Eplus*, 313 F.3d at 170-171, 182-84.

Although it is true that Plaintiff alleges that Telos RICO defendants sought to fraudulently obtain trade secrets from Telos' and Xacta's competitors generally, Amended Compl. ¶¶ 353-54, seeking to establish the continuing threat requirement, Plaintiff states no facts in support of such a contention for the

first 352 paragraphs of its Amended Complaint.   In fact,
paragraphs 1 to 352 of the Amended Complaint make no mention of
any other competitors of Telos, Xacta, and SecureInfo, or of BAI
and the Telos RICO defendants communicating with other
competitors of Telos, Xacta, and SecureInfo, or seeking to obtain
trade secrets from other competitors.   Consequently, because
Plaintiff does not satisfy the requirement of a "pattern of
racketeering activity" required by RICO, the Court grants
Defendants' motion to dismiss the RICO claim.

### *STATE LAW CLAIMS*

### **Count V: Fraud and Deceit**

The Court grants Defendant Mr. Berman's motion to dismiss
the fraud and deceit claim against him because, regardless of
whether the claim sounds in tort or contract, SecureInfo failed
to allege actual damages flowing from the fraud.   The elements of
fraud under Virginia law are "(1) a false representation, (2) of
a material fact, (3) made intentionally and knowingly, (4) with
intent to mislead, (5) reliance by the party misled, and (6)
resulting damage to the party misled."   *Ricmond Metro. Auth. v.
McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 346-47 (Va. 1998)
(quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387,
290 (Va. 1994)).   A plaintiff must allege damages flowing from
the fraud.   *See, e.g., Community Bank v. Wright*, 267 S.E.2d 158,

47

160 (Va. 1980) ("An allegation of fraud in the abstract does not give rise to a cause of action; it must be accompanied by allegation and proof of damage.") (citation omitted).  No damage is alleged "where the position of the complaining party is no worse than it would have been had the alleged fraud not been committed."  *Id.* (citing *Cooper v. Wesco Builders, Inc.*, 281 P.2d 669, 672 (Idaho 1955)); *see also Murray v. Hadid*, 385 S.E.2d 898, 904 (Va. 1989) (upholding trial court's decision to set aside jury award on damages because Plaintiffs "did not actually lose anything" as a result of Defendants' fraud).  SecureInfo alleges that, as a result of Mr. Berman's misrepresentations, it "has been injured because Defendants Telos, Xacta, Tracy, and Wilson have now learned and will retain Plaintiff SecureInfo's... copyright-protected information which *they may use* to cause Plaintiff SecureInfo financial loss in excess of $20 million." Amended Compl. ¶ 310 (emphasis added).  SecureInfo alleges no actual damages, only damages that *may* occur should these defendants use the information they acquired from SecureInfo via Mr. Berman.  Consequently, the Court grants Mr. Berman's motion to dismiss the fraud and deceit claim against him.

**Counts VI and IX: Conspiracy to Fraudulently Obtain Trade Secrets By Deceit and Tortious Interference with Contract, and Combination to Injure Plaintiff in its Reputation, Trade, or Business in Violation of Va. Code Ann. § 18-2-499**

The Court grants Defendants' motion to dismiss counts VI and

IX of the Amended Complaint because an entity can neither conspire nor combine with an agent under Virginia law, and Plaintiff's factual allegations establish that Mr. Berman was an agent of the Telos Defendants.  A civil conspiracy is "a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means."  MICHIE'S JURIS. "Conspiracy" § 4 (1999 & 2004 Supp.) (citing *Ross v. Peck Iron & Metal Co.*, 264 F.2d 262, 268 (4th Cir. 1959)).  To state a claim for a violation of the business conspiracy statute, Va. Code Ann. § 18.2-499, a plaintiff must allege (1) a combination of two or more persons for the purpose of willfully and maliciously injuring a plaintiff's business, and (2) resulting damage to the plaintiff.  *See* Va. Code Ann. § 18-2-499; *see, e.g., Fox*, 362 S.E.2d at 708 (citations omitted).  The doctrine of intracorporate immunity, however, recognizes that a conspiracy "requires two or more persons and that, because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy." *Lewin*, 95 F.Supp.2d at 524-25; *see also Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) (discussing intracorporate immunity doctrine); *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985) (recognizing intracorporate immunity doctrine under state law).  Under Virginia law, an "agent" is (1) subject to the control of the principal with regard to the work to be

49

done and manner of performing it, and (2) the work has to be done on the business of the principal or for the principal's benefit. *Whitfield v. Whittaker Mem'l Hosp.*, 169 S.E.2d 563, 567 (Va. 1969).

Plaintiff alleges that Defendants Wilson, Tracy, and Wood are employees of Xacta or Telos, or both.  Amended Compl. ¶¶ 66 and 67 (Wilson - Xacta), ¶ 73 (Tracy – Telos and Xacta), ¶ 87 (Wood – Telos and Xacta), ¶ 209 ("[A]t all times when Defendant Wilson and/or someone acting on his behalf intentionally accessed SecureInfo's RMS system which was installed on the BAI Server, they were acting as an employee and/or agent and /or under the direction of Defendants Xacta and Telos.").  In addition, SecureInfo alleges that Telos is Xacta's parent company.  *Id.* ¶ 207.  In its Amended Complaint, SecureInfo repeatedly states facts to establish an agency relationship between Defendant Mr. Berman and the Telos Defendants.  SecureInfo alleges that it hired Mr. Berman to perform a competitive analysis of SecureInfo's RMS.  *Id.* ¶ 70.  To illustrate the close relationship between Xacta and Mr. Berman, Plaintiff cites a "Sole Source Justification" stating that Mr. Berman "was one of the original inventors associated with the development of the Xacta Web C&A application" and that he "has consistently produced satisfactory work for Xacta," *id.* ¶ 120, as well as pointing out repeatedly that Mr. Berman was referred to as "Lon" by the other

defendants.  *See, e.g., id.* ¶¶ 126-27.  Mr. Berman signed his emails to Xacta regarding the evaluation of SecureInfo's RMS as "Lon Berman, Consultant to Xacta."  *Id.* ¶ 109.  Most significant, SecureInfo alleges that all the Telos Defendants charged with copyright infringement "directed and paid" Mr. Berman to obtain copies of SecureInfo's materials, *id.* ¶ 265, and that they are vicariously liable for Mr. Berman's copyright infringement because they "had the right and ability to supervise" his conduct, and that they "received a direct financial interest in the profits or a benefit from" his conduct."  *Id.* ¶ 268.  Counts VI and IX reallege all prior paragraphs "as though fully set forth" therein.  *Id.* ¶¶ 311, 567.

Because Counts VI and IX reallege all prior allegations, and these include factual allegations that the Telos Defendants charged with copyright infringement "had the right and ability to supervise" Mr. Berman's conduct, and that they "received a direct financial interest in the profits or a benefit from" his conduct," *id.* ¶ 268, Plaintiff has alleged that an agency relationship exists between Mr. Berman and the copyright claim defendants under Virginia law.  *See Whitfield*, 169 S.E.2d at 567 (describing that control and benefit are elements of an agency relationship).  Plaintiff's argument that it is protected from dismissal because it is permitted to allege alternative theories of recovery under Federal Rule of Civil Procedure 8(e)(2) is

51

without merit because that rule does not allow plaintiffs to make inconsistent factual allegations.  *See, e.g., Aetna Co. & Sur. Co. V. Aniero Concrete Co.*, 404 F.3d 566, 594 (2d Cir. 2005) (stating that a plaintiff could not put forth alternative theories of recovery where "it must state allegations which are at odds with each other" to make out the elements of an individual claim).  Because (1) Plaintiff presents factual allegations that Mr. Berman was an agent of the copyright defendants, (2) he incorporates all prior allegations into Counts VI and IX, and (3) an agent may not conspire with its principal under the intracorporate immunity doctrine, the Court grants Defendants' motion to dismiss Counts VI and IX of Plaintiff's Amended Complaint.

## Count VII: Common Law Tortious Interference with Contract or Business Relationship

The Court grants Defendants' motion to dismiss Count VII because a person or entity cannot intentionally interfere with his, her, or its own contract.  *See Fox*, 362 S.E.2d at 708.  The elements of tortious interference with contract are:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985) (citing *Calbom*

*v. Knudtzon*, 396 P.2d 148, 151 (Wash. 1964)).  Under Virginia law, a person may not interfere with his own contract.  *See Fox*, 365 S.E.2d at 708 ("A person cannot intentionally interfere with his own contract.") (citing *Chaves v. Johnson*, 335 S.E.2d at 102).  SecureInfo alleges that Mr. Berman signed three contracts "on BAI's behalf."  Amended Compl. ¶ 331.  In addition, SecureInfo alleges that Defendant Berman "intentionally interfered with the contractual relationship" between SecureInfo and BAI.  *Id.* ¶ 333.  Despite Plaintiff's attempt to resuscitate this claim by arguing in its opposition to the motion to dismiss that Mr. Berman was no longer acting as a BAI agent at the time the tortious interference took place, nowhere does SecureInfo make factual allegations that Mr. Berman was acting outside the scope of his employment relationship with BAI when he signed the agreements or when he passed along SecureInfo's materials to the Telos Defendants.  Consequently, because a person may not interfere with his own contract, the Court grants Defendants' motion to dismiss Count VII.

## Count X: Virginia Computer Crimes Act, § 18.2-152.3

The Court grants Defendants' motion to dismiss Count X because it is preempted by the Copyright Act.  To determine whether a state law claim is preempted by federal copyright law, courts engage in a two-step analysis pursuant to 17 U.S.C.A. §

301(a).  A state law claim is preempted if (1) the work is
"'within the scope of the subject-matter of copyright' as
specified in 17 U.S.C.A. §§ 102, 103," and (2) "'the rights
granted under state law'" are "'equivalent to any exclusive
rights within the scope of federal copyright as set out in 17
U.S.C.A. § 106.'" *United States ex rel. Berge v. Bd. of Trs. of
the Univ. of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1996) (citing
*Rosciszewski*, 1 F.3d at 229).  A right granted under state law is
*not* equivalent to exclusive rights within the scope of federal
copyright law when there is an "'extra element' that changes the
nature of the state law action so that it is *qualitatively*
different from a copyright infringement claim."  *Id.* (citing
*Rosciszewski*, 1 F.3d at 229-30).

**Step 1 of the Preemption Test**

The first requirement of the preemption test is met for the
Virginia Computer Crimes Act claim because Defendants' allegedly
wrongful appropriation of SecureInfo's RMS and materials is a
premise of the claim, and computer software is within the subject
matter of copyright.  *See Madison River Mgmt. Co. v. Business
Mgmt. Software Corp.*, 351 F.Supp.2d 436, 442 (M.D.N.C. 2005)
(concluding that computer software fell within the subject matter
of copyright and holding conversion claim preempted under
Copyright Act where plaintiff alleged defendant's use of software

54

exceeded scope of restricted use license); *see also Trandes Corp.*, 996 F.2d at 659 (stating that rights in a computer program "clearly come[] within the 'subject matter of copyright' 17 U.S.C.A. § 102(a)").

### Step 2 of the Preemption Test

The Virginia Computer Crimes Act claim is preempted because it meets the second requirement of the preemption test: it is not "qualitatively different" from a copyright claim. *See ex rel. Berge*, 104 F.3d at 1463 (citing *Rosciszewski*, 1 F.3d at 229-30). To determine whether a claim is equivalent to a copyright claim, the Court must compare the elements of a claim for copyright infringement with the purportedly preempted cause of action. *See Trandes Corp.*, 996 F.2d at 659. The Court will not find preemption when a state law cause of action contains an "extra element" or when it "incorporate[s] elements beyond those necessary to prove copyright infringement, and... regulate[s] conduct qualitatively different from the conduct governed by federal copyright law." *Id.* at 659 (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200-01 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985), and 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1] at 1-14 (1992)).

To make out a claim for copyright infringement, a plaintiff

55

must show (1) ownership of a valid copyright and (2) that the defendant copied original elements of the copyrighted work or encroached upon an exclusive right conferred by the copyright. *See Trandes Corp.*, 996 F.2d at 660; *see also Madison River Mgmt.*, 351 F.Supp.2d at 443 (citing *Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 571 (4th Cir. 1994)).  "The exclusive rights conferred by a copyright are to reproduce the copyrighted work, prepare derivative works, distribute copies of the work, and perform or display the work publicly."  *Madison River Mgmt.*, 351 F.Supp.2d at 443 (citing 17 U.S.C.A. § 106).  Virginia Code § 18.2-152.3 states that "any person who uses a computer or computer network, without authority and: 1. Obtains property or services by false pretenses; 2. Embezzles or commits larceny; or 3. Converts the property of another; is guilty of the crime of computer fraud."  Va. Code. Ann. § 18.2-152.3.  Section 18.2-152.12(a) provides a civil cause of action for persons harmed by violators of the VCCA.  *Id.* § 18.2-152.3.  In *Rosciczewski*, the Fourth Circuit held that "the protection of computer programs from unauthorized copying granted under § 18.2-152.3 is equivalent to the exclusive right of the copyright owner to reproduce a copyrighted work under the Copyright Act."  1 F.3d at 230.  Plaintiff alleges that Defendants Telos, Xacta, and Mr. Wilson accessed RMS software without permission and downloaded it to use it to compete directly with SecureInfo.  Plaintiff further alleges that these

56

defendants' "use, copying and downloading" will cost SecureInfo $20 million.  Because the Fourth Circuit has held that allegations of unauthorized copying of software under the Virginia Computer Crimes Act are preempted by the Copyright Act, the Court grants Defendants' motion to dismiss the Virginia Computer Crimes Act claim.

## Count XIII: Common Law Detinue

The Court denies Defendants' motion to dismiss the common law detinue claim because it is not preempted by the Copyright Act, and because Plaintiff states a claim for detinue under Virginia law.  An action for detinue in this context is not preempted by the Copyright Act because it is qualitatively different from a copyright claim, in that it contains an extra element separate and apart from a copyright claim, and because the detinue involves physical property.  *See Trandes Corp.*, 996 F.2d at 659.  An action for detinue lies when a party unlawfully withholds the personal property of another.  6A MICHIE'S JURISP. "Gist of the Action" § 4 (citing *Talley*, 115 S.E. 517); Va. Code Ann. § 8.01-114 ("A proceeding in detinue to recover personal property unlawfully withheld from the plaintiff may be brought on a warrant or motion for judgment....").  The plaintiff must merely allege that it owns the chattel and that the defendant unlawfully withholds it.  *Talley*, 115 S.E. at 518.  The remedy

for a detinue claim is recovery of the item being withheld and any damages for its detention. *Broad St. Auto Sales, Inc. v. Baxter*, 334 S.E.2d 293 (Va. 1985). To make out a claim for copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) that the defendant copied original elements of the copyrighted work or encroached upon an exclusive right conferred by the copyright. *See Trandes Corp.*, 996 F.2d at 660; *see also Madison River Mgmt.*, 351 F.Supp.2d at 443 (citing *Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 571 (4th Cir. 1994)). "The exclusive rights conferred by a copyright are to reproduce the copyrighted work, prepare derivative works, distribute copies of the work, and perform or display the work publicly." *Madison River Mgmt.*, 351 F.Supp.2d at 443 (citing 17 U.S.C.A. § 106).

A detinue claim is different from a copyright infringement claim because a detinue claim requires the unlawful possession of the property *ab initio*, and in this case, because it involves the physical embodiment of a copy. The similar property right related torts of conversion and trespass are generally not preempted by copyright law because they relate to interface with tangible rather than intangible property. *See* 1 NIMMER & NIMMER, *supra* § 1.01[B][1][i] at 1-41 - 1-43 (2002) ("It is generally held that an action for conversion will lie only for wrongful possession of the tangible embodiment of a work (for instance, its manuscript), where as a copyright action must be brought for

wrongful use of the intangible artistic property (for instance a poem or other literary work) contained therein."); *see also Madison River Mgmt.*, 351 F.Supp.2d at 444-445 (holding Copyright Act preempted conversion claim because no claim of converting any physical objects was alleged, rather the claim pertained only to connecting to, copying, converting, and distributing software). SecureInfo, however, alleges not only that the detinue defendants are in possession of its software, but also that they produced "outputs" of information that they copied and downloaded to their computers. Amended Compl. ¶¶ 269-270. Consequently, the plaintiff alleges that the detinue defendants wrongfully possess physical copies of their materials, placing it outside the province of the Copyright Act. *Cf. Microstrategy, Inc. v. Netsolve, Inc.*, 368 F.Supp.2d 533, 537 (E.D.Va. 2005) (granting the defendant's motion to dismiss a conversion claim "because Plaintiff alleges no physical object was unlawfully retained by Defendant and because it alleges no extra element rendering the conversion claim qualitatively different from a copyright claim").[4] Because Virginia's common law detinue action contains an element that is qualitatively different from a copyright

---

[4] This case is easily distinguishable from *Microstrategy*, decided by this Court, where one software company sued another for exceeding the scope of a software license agreement, because in this case, the detinue defendants obtained materials from a *third party*, Mr. Berman, who exceeded the scope of the license agreement, rather than from the plaintiff.

claim, and because Plaintiff alleges that the detinue defendants made physical copies of the materials, the detinue claim is not preempted by the Copyright Act.

In addition, the Court denies Defendants' motion to dismiss the detinue claim because Plaintiff properly alleges the elements of a detinue claim under Virginia law.  *See Talley*, 115 S.E. at 518 (stating that the plaintiff must merely allege that it owns the chattel and that the defendant unlawfully withholds it). SecureInfo alleges that it owns the SecureInfo RMS materials, and that the detinue defendants unlawfully withheld them.  Amended Compl. ¶¶ 610, 614.  It also alleges that Plaintiff produced outputs of these materials.  Amended Compl. ¶¶ 269-270; *see also* Telos Defs.' Reply, Ex. 4 (physical copy of RMS produced by the defendants for purposes of stipulated temporary restraining order).  Consequently, the Court denies the defendants' motion to dismiss the detinue claim because it is not preempted by the Copyright Act, and because Plaintiff properly pleads the elements of a detinue claim.


**Count XII: Common Law Trespass to Chattels**

The Court grants the defendants' motion to dismiss Plaintiff's trespass to chattels claim because Plaintiff fails to allege that the chattel that was used or meddled with was impaired.  Trespass to chattels occurs when a party

60

"intentionally uses or intermeddles with personal property in rightful possession of another without authorization." *America Online, Inc.*, 24 F.Supp.2d at 550 (citing RESTATEMENT (SECOND) OF TORTS § 217(b)).  If the chattel is impaired as to its value, condition, or quality, the trespassor is liable to the possessor of the chattel.  *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 218(b)). Virginia recognizes the tort of trespass to chattels.  *See id.* (citing *Vines v. Branch*, 418 S.E.2d 890, 894 (Va. 1992)). Plaintiff alleges that by gaining unauthorized access to and downloading the contents of RMS, Defendants Telos, Xacta, and Mr. Wilson intentionally interfered with SecureInfo's possessory interest in its confidential proprietary information for their own enrichment.  As a result, these defendants caused damage to SecureInfo by affecting its exclusive right of possession over its property and contributing to the loss of actual and potential customers and goodwill, injury to its reputation, and "diminution in the value of its confidential information and other proprietary data."  Amended Compl. ¶ 606.  Plaintiff does not, however, allege that the *materials that were taken* by the defendants were damaged or diminished in value.  Since there is no liability for trespassors unless the chattel is impaired as to its value, condition, or quality, the Court grants Defendants' motion to dismiss the common law trespass to chattels claim. *America Online, Inc.*, 24 F.Supp.2d at 550 (citing RESTATEMENT

(SECOND) OF TORTS § 218(b)).

### III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that

(1) Defendants' motions to dismiss are GRANTED as to Counts I-III (Computer Fraud and Abuse Act), V (fraud and deceit), VI (conspiracy to fraudulently obtain trade secrets by deceit and tortious interference with contract), VII (common law tortious interference with contract), VIII (RICO), IX (combination to injure Plaintiff's reputation, trade, or business), X (Virginia Computer Crimes Act), and XII (common law trespass to chattels); (2) Defendants motion to dismiss is DENIED as to Count IV, XI, and XIII.

The Clerk is directed to forward a copy of this Order to Counsel.

Entered this __9th__ day of September, 2005.


_____/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
9/9/05

62